REEVES v CARSON CITY HOSPITAL (ON REMAND)

Docket No. 266469. Submitted December 27, 2006, at Lansing. Decided March 8, 2007, at 9:05 a.m.

Catherine R. and Anthony L. Reeves brought a medical malpractice action in the Ingham Circuit Court against Carson City Hospital and others, including Lynn Squanda, D.O. At the time of the alleged malpractice, Squanda was board-certified in family medicine, but was working in the emergency room. The plaintiffs' affidavit of merit was signed by Eric Davis, M.D., a physician who was board-certified in emergency medicine but not in family medicine. The defendants moved to strike Davis as an expert witness, arguing that he was not qualified under MCL 600.2169. Relying on *Halloran v Bhan*, 470 Mich 572 (2004), which held that an expert witness in a medical malpractice case must have the same board certification as the party against whom or on whose behalf the testimony is offered, the court, Beverley Nettles-Nickerson, J., ruled that Davis was not qualified to testify as an expert witness against Squanda. The plaintiffs appealed. The Court of Appeals affirmed in an unpublished opinion per curiam, issued April 6, 2006. The Supreme Court vacated the judgment of the Court of Appeals and remanded the case to this Court for reconsideration in light of *Woodard v Custer*, 476 Mich 545 (2006). 477 Mich 934 (2006).

On remand, the Court of Appeals *held*:

Under *Woodard*, the plaintiffs' expert must match the specialty that Squanda engaged in during the course of the alleged malpractice, given that she was practicing outside her board certification. In this case, that specialty is emergency medicine. Squanda must be considered a specialist in emergency medicine under *Woodard* because she was practicing in the emergency room and could potentially become board-certified in emergency medicine. Thus, the plaintiffs would need a specialist in emergency medicine to satisfy the requirements of MCL 600.2169. Davis is board-certified in emergency medicine, but nothing in the statute precludes a board-certified specialist from being an expert in a case involving a defendant who is not board-certified in the relevant specialty. Under MCL 600.2169(1)(b), however, Davis must also have devoted the majority of his professional time during the year

preceding the occurrence of the alleged malpractice to the active clinical practice of emergency medicine or to the instruction of students in that specialty. Because the record contains no information regarding how Davis spent the majority of his professional time, this case must be remanded for a determination of that issue.

Order vacated and case remanded.

WITNESSES — EXPERT WITNESSES — MEDICAL MALPRACTICE — PHYSICIANS AND SURGEONS — SPECIALISTS — BOARD CERTIFICATIONS.

A physician board-certified in a branch of medicine who, when alleged medical malpractice occurred, was practicing a different branch of medicine in which the physician could potentially become board-certified is a specialist in that other branch of medicine for the purpose of determining the qualifications required of an expert witness testifying against or on behalf of the physician (MCL 600.2169).

*Worsham & Victor, P.C.* (by *John J. Schutza*), for Catherine R. and Anthony L. Reeves.

*Johnson & Wyngaarden, P.C.* (by *Michael L. Van Erp*), for Carson City Hospital and Lynn Squanda.

ON REMAND

Before: NEFF, P.J., and SAAD and BANDSTRA, JJ.

SAAD, J. Catherine R. and Anthony L. Reeves filed this medical malpractice action against several defendants, including Lynn Squanda, D.O., who is board-certified in family medicine, but was working in the emergency room at the time of the alleged malpractice. The Reeveses claimed that Dr. Squanda and others were negligent in failing to timely diagnose and treat Catherine Reeves's ectopic pregnancy. The Reeveses filed an affidavit of merit signed by Eric Davis, M.D., who is board-certified in emergency medicine, but not board-certified in family medicine.

Following discovery, defendants moved to strike Dr. Davis as an expert witness and argued that he was not

qualified to testify against Dr. Squanda under MCL 600.2169 because he was not board-certified in family medicine.[1] Defendants relied on *Halloran v Bhan*, 470 Mich 572, 577; 683 NW2d 129 (2004), in which our Supreme Court held that an expert in a medical malpractice case must have the same board certification in a specialty as the party against whom or on whose behalf the expert's testimony is offered. The Reeveses' primary argument is that, because Dr. Squanda was practicing emergency medicine at the time the alleged malpractice occurred, her board certification in family medicine is irrelevant. The trial court agreed with defendants and ruled that Dr. Davis was not qualified to testify as an expert against Dr. Squanda.[2] We vacate the trial court's order and remand for further proceedings consistent with this opinion.

The qualifications of an expert concerning the standard of care in a medical malpractice action are governed by MCL 600.2169, which provides, in relevant part:

> (1) In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:

---

[1] Dr. Davis signed the affidavit of merit attached to Reeveses' complaint. Defendants did not challenge the affidavit of merit pursuant to MCL 600.2912d. That statute provides that an affidavit is valid if, among other things, counsel reasonably believes that the health professional is qualified under MCL 600.2169 to address the standard of care. As noted, after discovery, defendants moved to strike Dr. Davis on the ground that he was not qualified to provide testimony about the applicable standard of care.

[2] We affirmed the trial court's ruling on the basis of *Halloran* in *Reeves v Carson City Hosp*, unpublished opinion per curiam of the Court of Appeals, issued April 6, 2006 (Docket No. 266469). However, our Supreme Court vacated our judgment in *Reeves* and remanded the case for reconsideration in light of *Woodard v Custer*, 476 Mich 545; 719 NW2d 842 (2006). 477 Mich 934 (2006).

(a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.

(b) Subject to subdivision (c) [dealing with general practitioners], during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:

(*i*) The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, the active clinical practice of that specialty.

(*ii*) The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.

This case is controlled by the Supreme Court's opinion in *Woodard v Custer*, 476 Mich 545; 719 NW2d 842 (2006). In *Woodard*, the defendant physician was board-certified in pediatrics and had certificates of special qualifications in pediatric critical care medicine and neonatal-perinatal medicine. *Id.* at 554. The alleged malpractice occurred while the plaintiffs' infant son was hospitalized in the pediatric intensive care unit. *Id.* The plaintiffs' proposed expert witness, who signed the affidavit of merit, was board-certified in pediatrics, but did not have any certificates of special qualifications. *Id.* at 554-555.

In *Hamilton v Kuligowski,* the companion case to *Woodard,* the defendant physician who allegedly failed to properly diagnose and treat prestroke symptoms was board-certified in general internal medicine and was practicing general internal medicine at the time of the alleged malpractice. *Id.* at 556. The plaintiff's proposed expert was board-certified in general internal medicine, but devoted a majority of his time to treating infectious diseases and, therefore, did not devote a majority of his time to practicing or teaching general internal medicine. *Id.*

In *Woodard* and *Hamilton,* at least one of the board certifications of the defendant physicians matched a board certification of the proposed experts. In this context, the Supreme Court held:

> Although specialties and board certificates must match, not *all* specialties and board certificates must match. Rather, [MCL 600.2169(1)] states that "a person shall not give expert testimony on the *appropriate* standard of practice or care unless . . . ." (Emphasis added.) That is, [MCL 600.2169(1)] addresses the necessary qualifications of an expert witness to testify regarding the "*appropriate* standard of practice or care," not regarding an inappropriate or irrelevant standard of medical practice or care. Because an expert witness is not required to testify regarding an inappropriate or irrelevant standard of medical practice or care, [MCL 600.2169(1)] should not be understood to require such witness to specialize in specialties and possess board certificates that are not relevant to the standard of medical practice or care about which the witness is to testify. [*Id.* at 558-559.]

The Court went on to hold that MCL 600.2169(1) requires only that a single specialty and board certification match, not that multiple specialties and certifications match. *Id.* at 559-560. Quoting *Tate v Detroit Receiving Hosp,* 249 Mich App 212, 218; 642 NW2d 346

(2002), the Court opined " 'that the specialty requirement is tied to the occurrence of the alleged malpractice and not unrelated specialties that a defendant physician may hold.' " *Woodard, supra* at 559. Further, the Court recognized that, under MCL 600.2169(1), the expert must have devoted the majority of his or her professional time during the previous year to either the " 'active clinical practice' or the 'instruction of students' in 'the same specialty' as the defendant physician." *Id.* at 559-560. The Court concluded that MCL 600.2169(1)

> only requires the plaintiff's expert to match one of the defendant physician's specialties. Because the plaintiff's expert will be providing expert testimony on the appropriate or relevant standard of practice or care, not an inappropriate or irrelevant standard of practice or care, it follows that the plaintiff's expert witness must match the one most relevant standard of practice or care—the specialty engaged in by the defendant physician during the course of the alleged malpractice, and, if the defendant physician is board certified in that specialty, the plaintiff's expert must also be board certified in that specialty. [*Id.* at 560.]

In *Woodard*, the Court determined that the most relevant specialty in which the defendant physician was engaged at the time of the alleged malpractice was pediatric critical care. The infant was critically ill and was in the pediatric intensive care unit. Because the defendant had a certificate of special qualifications in pediatric critical care medicine, the statute required that the proposed expert also have this certificate of special qualifications. That the proposed expert was board-certified in pediatrics was not sufficient, and that the defendant also had a certificate of neonatal-perinatal medicine was irrelevant because this was not the specialty the defendant physician was practicing

when the malpractice occurred. Because the proposed expert did not have a certificate of special qualifications in pediatric critical care medicine, he did not satisfy the same-specialty requirement. See *id.* at 575-577.

In *Hamilton,* the defendant and the proposed expert shared the same board certification in general internal medicine. Moreover, general internal medicine was the specialty the defendant physician was practicing at the time of the alleged malpractice. However, because the proposed expert had not devoted the majority of his professional time in the previous year to general internal medicine, he did not satisfy the practice/instruction requirement. See *id.* at 577-578.

Neither case addressed a situation in which, as here, the defendant was practicing outside his or her board certification. Again, Dr. Squanda is board-certified in family practice, but was practicing in the emergency room. Because "the specialty engaged in by the defendant physician during the course of the alleged malpractice" was emergency medicine, it is the "one most relevant standard of practice or care[.]" *Id.* at 560. If Dr. Squanda can be regarded as a "specialist" in emergency medicine, MCL 600.2169(1) would require only that the expert "specialize[] at the time of the occurrence that is the basis for the action in the same specialty . . . ." In *Woodard,* the Court stated:

> Both the dictionary definition of "specialist" and the plain language of [MCL 600.2169(1)(a)] make it clear that a physician can be a specialist who is not board certified. They also make it clear that *a "specialist" is somebody who can potentially become board certified.* Therefore, a "specialty" is a particular branch of medicine or surgery in which one can potentially become board certified. *Accordingly, if the defendant physician practices a particular branch of medicine or surgery in which one can potentially become board certified, the plaintiff's expert must practice*

*or teach the same particular branch of medicine or surgery.*
[*Id.* at 561-562 (Emphasis added).]

A physician may obtain a board certification in emergency medicine, and, though Dr. Squanda is not board-certified in emergency medicine, she could "potentially" become board-certified under the reasoning of *Woodard*. The briefs do not suggest that the record established what is required for board certification in emergency medicine, but presumably a physician can undertake an additional residency and pass whatever boards are required for certification. Nonetheless, because Dr. Squanda was practicing emergency medicine and one could potentially become certified in emergency medicine, the plaintiff's expert would be required to practice or teach emergency medicine. It is not a prerequisite that the expert be board-certified in emergency medicine, but nothing in the statute requires that the expert be a "specialist" only, as opposed to a board-certified specialist. In other words, if the defendant is board-certified, the expert must be board-certified, but if the defendant is merely a "specialist," the expert must be at least a specialist.

However, even if the expert is a specialist who can provide testimony on the appropriate standard of practice or care, the expert must also satisfy the practice/instruction requirement. As the *Woodard* Court noted:

> MCL 600.2169(1)(b) provides that if the defendant physician is a specialist, the expert witness must have "during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either ... the active clinical practice of that specialty [or] [t]he instruction of students in an ... accredited health professional school or accredited residency or clinical research program in the same specialty." [*Id.* at 565.]

The curriculum vitae of plaintiffs' expert, Dr. Davis, indicates that he has taught emergency medicine at the University of Rochester Medical School from 1995 to the present, and has been the medical director of emergency medical services for the Monroe Livingston Region from 1995 to the present. Dr. Davis was also a member, board member, advisor, consultant, and representative for various entities. There is no indication whether Dr. Davis spent the *majority* of his professional time in the active clinical practice of emergency medicine or the instruction of students, or whether a majority of his time was spent on these other pursuits. Thus, we conclude that the trial court must make a determination on this issue.

In sum, because Dr. Squanda was practicing emergency medicine at the time of the alleged malpractice and potentially could obtain a board certification in emergency medicine, she was a "specialist" in emergency medicine under the holding in *Woodard*. Thus, plaintiffs would need a specialist in emergency medicine to satisfy MCL 600.2169; Dr. Davis, as a board-certified emergency medicine physician, would satisfy this requirement. However, the specialist must have also devoted the majority of his professional time during the preceding year to the active clinical practice of emergency medicine or the instruction of students. Because there is no information in the record regarding what comprised the majority of the expert's professional time, a remand for a determination on this issue is necessary.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.