GONZALEZ v ST JOHN HOSPITAL & MEDICAL CENTER
(ON RECONSIDERATION)

Docket No. 272093. Submitted March 13, 2007, at Lansing. Decided April
19, 2007, at 9:00 a.m.

Bonnie J. Gonzalez, as personal representative of the estate of Conde
Gonzalez, deceased, brought a medical malpractice action in the
Wayne Circuit Court against St. John Hospital & Medical Center,
Christopher N. Vashi, M.D., and others, relating to the decedent's
care and treatment at St. John by Vashi, who was a surgical
resident. The plaintiff submitted an affidavit of merit from Mark
Gordon, M.D., a board-certified general surgeon, stating that Vashi
breached the standard of care in his treatment of the defendant.
After Vashi was dismissed from the action, the court, Susan D.
Borman, J., granted summary disposition to St. John, ruling that
Vashi was a general practitioner rather than a specialist and that,
under MCL 600.2169, which governs the qualification of expert
witnesses in medical malpractice actions, Gordon, a specialist, was
not qualified to testify against Vashi. The remaining defendants
were dismissed from the action, and the plaintiff appealed.

The Court of Appeals *held*:

1. The trial court erred by granting summary disposition for
St. John. Physicians who are residents and limit their training to
a particular branch of medicine or surgery and who can potentially
become board-certified in that specialty are specialists for the
purposes of MCL 600.2169(1).

2. Under MCL 600.2169(1)(a), a physician who is a specialist
may testify regarding the applicable standard of care and whether
a resident has breached that standard if the specialist has suffi-
cient knowledge, skill, experience, training, or education, and
familiarity with the practice of the specialty by residents.

3. Under MCL 600.2169(1)(b), if a defendant physician is a
specialist, the expert witness must have during the year immedi-
ately preceding the date of the occurrence that is the basis for the
claim or action devoted a majority of his or her professional time to
either the active clinical practice of the specialty or the instruction
of students in an accredited health professional school or accred-
ited residency or clinical research program in the specialty.

4. In addition to satisfying the requirements of MCL 600.2169(1)(a) and (b), the expert witness of a plaintiff in a medical malpractice action against a specialist must be qualified under MRE 702, MRE 703, MCL 600.2955, and MCL 600.2169. Under MRE 702, the witness must be qualified as an expert by knowledge, skill, experience, training, or education. Under MRE 703, the expert testimony offered must be based on the factual predicate knowledge of the expert. MCL 600.2169 requires a trial court to evaluate (a) the educational and professional training of the expert witness, (b) the area of specialization of the witness, (c) the length of time the expert witness has been engaged in the active clinical practice or instruction of the health profession or the specialty and (d) the relevancy of the expert witness's testimony. Under MCL 600.2955, a scientific opinion rendered by an otherwise qualified expert is not admissible unless the court determines that the opinion is reliable and will assist the trier of fact. In making that determination, the court must examine the opinion and basis of the opinion, which basis includes the facts, technique, methodology, and reasoning relied on by the expert. The court must also consider (a) whether the opinion and its basis have been subjected to scientific testing and replication, (b) whether the opinion and its basis have been subjected to peer-review publication, (c) the existence and maintenance of generally accepted standards governing the application and interpretation of a methodology or technique and whether the opinion and its basis are consistent with those standards, (d) the known or potential error rate of the opinion and its basis, (e) the degree to which the opinion and its basis are generally accepted within the relevant expert community, (f) whether the basis for the opinion is reliable and whether experts in that field would rely on the same basis to reach the type of opinion being proffered, and (g) whether the opinion or methodology is relied upon by experts outside the context of litigation. Under MCL 600.2955(2), a novel methodology or form of scientific evidence may be admitted into evidence only if its proponent establishes that it has achieved general scientific acceptance among impartial and disinterested experts in the field.

5. On remand, the trial court must make the aforementioned determinations with respect to the plaintiff's expert.

Reversed and remanded for further proceedings.

1. WITNESSES — EXPERT WITNESSES — MEDICAL MALPRACTICE — RESIDENTS.

Physicians who are residents and limit their training to a particular branch of medicine or surgery and who can potentially become board-certified in that specialty are specialists, not general prac-

titioners, for the purposes of the statute governing the qualifications of expert witnesses in medical malpractice actions (MCL 600.2169[1]).

2. Witnesses — Expert Witnesses — Medical Malpractice — Residents.

A physician who is a specialist may testify regarding the applicable standard of care and whether a medical resident has breached that standard if the specialist has sufficient knowledge, skill, experience, training, or education in, and familiarity with, the practice of the specialty by residents (MCL 600.2169[1][a]).

3. Witnesses — Expert Witnesses — Medical Malpractice — Specialists.

An expert witness on standard of care for a plaintiff in an action for medical malpractice by a specialist, in addition to meeting the requirements of the statute governing the qualification of expert witnesses in such an action, must also meet the requirements of MRE 702, MRE 703, MCL 600.2955, and MCL 600.2169 concerning the expert's qualifications and opinion (MCL 600.2169[1][a] and [b]).

*Freedman & Herskovic, PLC* (by *Stuart G. Freedman*), and *Richard E. Shaw* for Bonnie J. Gonzalez.

*Kitch Drutchas Wagner Valitutti & Sherbrook* (by *Beth A. Wittmann, Anthony G. Arnone,* and *Cheryl A. Cardelli*), for St. John Hospital & Medical Center.

ON RECONSIDERATION

Before: SAWYER, P.J., and FITZGERALD and DONOFRIO, JJ.

DONOFRIO, J. Plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendant St. John Hospital & Medical Center (St. John) in this medical malpractice action. Because the trial court granted summary disposition to defendant in the belief that MCL 600.2169(1)(c) precluded plaintiff's proposed expert's testimony, the trial court erroneously granted summary disposition in favor of defen-

dant, and we reverse and remand. This appeal is being decided without oral argument pursuant to MCR 7.214(E).

Decedent, Conde Gonzalez, was admitted to St. John for treatment of complications resulting from colorectal surgery. Defendants Christopher N. Vashi, M.D., then a third-year surgical resident, and Peter D. Kowynia, M.D., decedent's surgeon, both treated decedent. Decedent began to bleed profusely from a drainage catheter. A leak was discovered in decedent's left iliac artery, and despite surgical intervention to repair the leak, decedent died. Plaintiff filed suit alleging that defendants committed medical malpractice in their diagnosis and treatment of decedent. Plaintiff submitted an affidavit of merit from Mark Gordon, M.D., who is a board-certified general surgeon and who stated that Vashi violated the applicable standard of care in his treatment of decedent.

Defendants St. John; Peter D. Kowynia, M.D.; and Northeast Surgical Associates, P.C., Kowynia's professional corporation, moved for summary disposition pursuant to MCR 2.116(C)(7) or (10).[1] Defendants argued that because plaintiff's expert was a specialist and Vashi was a general practitioner, the expert was not qualified to offer testimony against Vashi under MCL 600.2169(1)(c). The trial court granted summary disposition in favor of St. John. The trial court ruled that Vashi was a general practitioner rather than a specialist, and that, under MCL 600.2169, Gordon, a specialist, was not qualified to testify against Vashi. This appeal followed.

---

[1] The trial court dismissed Vashi as a defendant before the filing of the motion for summary disposition. The trial court dismissed Kowynia and Northeast Surgical Associates from the case before it ruled on the motion for summary disposition.

We review a trial court's decision on a motion for summary disposition de novo. *Auto Club Group Ins Co v Burchell*, 249 Mich App 468, 479; 642 NW2d 406 (2001). Similarly, statutory interpretation is a question of law that we review de novo on appeal. *Eggleston v Bio-Medical Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003). We review for abuse of discretion a trial court's ruling regarding the qualification of a proposed expert witness to testify. *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006). The abuse of discretion standard recognizes that there may be no single correct outcome in certain situations; instead, there may be more than one reasonable and principled outcome. When the trial court selects one of these principled outcomes, it has not abused its discretion, and the reviewing court should defer to the trial court's judgment. An abuse of discretion occurs when the trial court chooses an outcome falling outside the principled range of outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006); *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

In a medical malpractice case, the plaintiff bears the burden of proving: (1) the applicable standard of care; (2) breach of that standard by the defendant; (3) an injury; and (4) proximate causation between the alleged breach and the injury. *Wischmeyer v Schanz*, 449 Mich 469, 484; 536 NW2d 760 (1995). If the defendant is a general practitioner, the plaintiff must prove that the defendant "failed to provide the plaintiff the recognized standard of acceptable professional practice or care in the community in which the defendant practices or in a similar community . . . ." MCL 600.2912a(1)(a). Expert testimony is required to establish the applicable standard of care and to demonstrate that the defendant breached that standard. *Birmingham v Vance*, 204 Mich

App 418, 421; 516 NW2d 95 (1994). In order to proceed against a hospital on a theory of vicarious liability, a plaintiff must offer expert testimony to establish specific breaches of the standards of care applicable to the individuals involved in the plaintiff's care and treatment alleged to be deficient. *Cox v Flint Bd of Hosp Managers*, 467 Mich 1, 22; 651 NW2d 356 (2002).

Plaintiff argues that the trial court erred by granting summary disposition in favor of St. John. Plaintiff states that a specialist is a physician who limits his or her practice to a specific branch of medicine or surgery, and in particular is one who, by virtue of advanced training, may be certified as a specialist. Arguing that a physician can be a specialist without being board-certified in the specialty, *Woodard, supra* at 561, plaintiff specifically asserts that at the time decedent died, Vashi was a resident receiving advanced training in general surgery; thus, Vashi should be considered a specialist in that field. St. John counters that, as a resident, Vashi is clearly a general practitioner. As such, plaintiff was required to establish a breach of the standard of care by producing an expert witness who, during the year immediately preceding the occurrence that forms the basis for the claim, devoted a majority of his or her professional time to active clinical practice as a general practitioner or to the teaching of general practice, citing MCL 600.2169(1)(c). St. John further states that summary disposition was proper because plaintiff's proffered expert witness, Dr. Gordon, was a general surgeon and not a general practitioner and, therefore, did not meet the requirements of MCL 600.2169(1)(c).

In Michigan, it is established that, in order to testify regarding the standard of care applicable in a particular case, the expert's qualifications must match those of the

defendant. MCL 600.2169(1);[2] *Decker v Flood*, 248 Mich App 75, 85; 638 NW2d 163 (2001). If the defendant is a

---

[2] MCL 600.2169(1) provides as follows:

In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:

(a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.

(b) Subject to subdivision (c), during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:

(*i*) The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, the active clinical practice of that specialty.

(*ii*) The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.

(c) If the party against whom or on whose behalf the testimony is offered is a general practitioner, the expert witness, during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:

(*i*) Active clinical practice as a general practitioner.

(*ii*) Instruction of students in an accredited health professional school or accredited residency or clinical research program in the

specialist, the expert witness must, at the time of the occurrence that forms the basis of the action, specialize in the same specialty, and subspecialty if applicable, as the defendant. MCL 600.2169(1)(a); *Woodard, supra* at 578-579. If the defendant is a general practitioner, the expert witness, "during the year immediately preceding the date of the occurrence that is the basis for the claim of action," must have devoted a majority of his or her professional time to active practice as a general practitioner or the teaching of general practice. MCL 600.2169(1)(c); *Woodard, supra* at 601 n 22 (TAYLOR, C.J., concurring in the result only).

In order to determine the standard of care applicable in the case at bar, we begin with a factual inquiry. Our review of the record reveals that it is not disputed that Vashi was a third-year surgical resident practicing within that discrete specialty on the date of the occurrence in this case. Because reasonable minds may not disagree regarding this factual inquiry, we move on to the legal analysis required and engage in an analysis to determine who is qualified to testify against Vashi, a third-year surgical resident practicing within the specialty of general surgery on the date of the occurrence.

In 1989, a panel of this Court held that a trial court did not abuse its discretion in refusing to permit the expert testimony of an internist and cardiologist against a resident. *Carlton v St John Hosp*, 182 Mich App 166, 173; 451 NW2d 543 (1989). Just a few years later, in 1993, this Court stated that "[i]t is clear that interns and residents are not 'specialists,' and, therefore, we conclude that the applicable standard of care for such persons is that of the local community or similar communities." *Bahr v Harper-Grace Hosps*, 198

same health profession in which the party against whom or on whose behalf the testimony is offered is licensed.

Mich App 31, 34; 497 NW2d 526 (1993), rev'd on other grounds 448 Mich 135 (1995), citing *Hilyer v Hole*, 114 Mich App 38, 43; 318 NW2d 598 (1982). Since then, *Bahr* has been the authority on the standard of care applicable to resident physicians practicing medicine in Michigan. However, our Supreme Court has recently discussed the requirements of MCL 600.2169(1) and stated:

> MCL 600.2169(1) does not define the term "specialty." "We may consult dictionary definitions of terms that are not defined in a statute." *People v Perkins*, 473 Mich 626, 639; 703 NW2d 448 (2005). . . .
>
> . . . Both the dictionary definition of "specialist" and the plain language of § 2169(1)(a) make it clear that a physician can be a specialist who is not board certified. *They also make it clear that a "specialist" is somebody who can potentially become board certified.* Therefore, a "specialty" is a particular branch of medicine or surgery in which one can potentially become board certified. Accordingly, if the defendant physician practices a particular branch of medicine or surgery in which one can potentially become board certified, the plaintiff's expert must practice or teach the same particular branch of medicine or surgery. [*Woodard, supra* at 561-562 (emphasis added).]

Under *Woodard*'s definition of specialist, any physician who can potentially become board-certified in a branch of medicine or surgery in which he or she practices is defined as a "specialist" for purposes of MCL 600.2169(1). *Woodard, supra* at 561-562. When discussing its definition of "specialist," the Supreme Court broadly defined "specialist" using the term "physician," which necessarily includes those physicians who are also residents. *Id.* Thus, applying *Woodard* to the instant case, considering that Vashi was a physician who limited his training to surgery, and who could potentially become board-certified on

completion of his residency, at the time decedent died, Vashi would be considered a "specialist." *Id.* As such, we read *Woodard* as overruling that portion of *Bahr, supra,* that holds that "residents are not 'specialists,' " and hold that those physicians who are residents and limit their training to a particular branch of medicine or surgery and who can potentially become board-certified in that specialty are specialists for purposes of the analysis under MCL 600.2169(1). *Id.*

Since we have determined that Vashi is a specialist for purposes of MCL 600.2169(1), we apply MCL 600.2169(1)(a) in order to determine the standard of care applicable in this particular case. Our Supreme Court stated that MCL 600.2169(1) "addresses the necessary qualifications of an expert witness to testify regarding the '*appropriate* standard of practice or care.' " *Woodard, supra* at 559. Therefore, we must determine what is the " '*appropriate* standard of practice or care' " where Vashi, a physician resident, was practicing in general surgery at the time of the occurrence. In doing so, we must be cognizant that MCL 600.2169(1) requires that, in order to testify regarding the standard of care applicable in a particular case, an expert's qualifications must match those of the defendant. *Decker, supra.* In other words, we must determine who may testify regarding the standard of care that applies to this physician resident practicing in general surgery.

Our Supreme Court's determination in *Woodard, supra,* provides guidance on this question. In *Woodard,* our Supreme Court dealt with a situation where the defendant physician was board-certified in pediatrics but had additional certificates of special qualifications in pediatric critical care medicine and neonatal-

perinatal medicine. *Woodard, supra* at 554. The alleged incident of malpractice involved an infant in a pediatric intensive care unit. *Id.* The plaintiffs in *Woodard* offered an expert witness who was board-certified in pediatrics but who did not have certificates of special qualifications. *Id.* at 554-555. The Supreme Court concluded that the most relevant specialty involved in the case was pediatric critical care, and because the defendant had a certificate of special qualification in pediatric critical care medicine, the proposed expert was inappropriate because he did not have a certificate of special qualification in pediatric critical care medicine and thus did not satisfy the same specialty requirement. See *id.* at 575-577. The Court counseled that MCL 600.2169(1)

> refers to "the same specialty" and "that specialty." It does not refer to "the same specialties" and "those specialties." That is, § 2169(1) requires the matching of a singular specialty, not multiple specialties. As the Court of Appeals explained in *Tate v Detroit Receiving Hosp*, 249 Mich App 212, 218; 642 NW2d 346 (2002), "the statute expressly uses the word 'specialty,' as opposed to 'specialties,' thereby implying that the specialty requirement is tied to the occurrence of the alleged malpractice and not unrelated specialties that a defendant physician may hold." [*Woodard, supra* at 559.]

Applying this reasoning, *Woodard* ultimately held that MCL 600.2169(1) requires that only a single relevant specialty or board certification match, not that multiple specialties or board certifications match. *Id.* at 559.

A panel of this Court recently applied *Woodard* to a situation where the defendant was a specialist practicing outside her board certification in *Reeves v Carson City Hosp (On Remand)*, 274 Mich App 622; 736 NW2d 284 (2007). In *Reeves*, the defendant physician was board-certified in family medicine but was practicing in

emergency medicine. *Id.* at 623. The alleged incident of malpractice involved the failure to timely diagnose and treat an ectopic pregnancy. *Id.* The plaintiffs in *Reeves* offered an expert witness who was board-certified in emergency medicine but was not board-certified in family medicine. *Id.* Applying the requirements of MCL 600.2169(1)(a) and the holding of *Woodard* to its case, the *Reeves* Court held that

> [the defendant physician] is board-certified in family practice but was practicing in the emergency room. Because "the specialty engaged in by the defendant physician during the course of the alleged malpractice" was emergency medicine, it is the "one most relevant standard of practice or care." [*Id.* at 628 (citation omitted).]

The *Reeves* Court ultimately concluded that because the defendant physician was practicing outside her board certification in emergency medicine at the time of the occurrence, and she could potentially become board-certified in emergency medicine, the application of *Woodard* and MCL 600.2169(1) required only that the plaintiff offer testimony from an expert in emergency medicine. *Reeves, supra* at 628-630. The *Reeves* Court specifically declared:

> [B]ecause [the defendant physician] was practicing emergency medicine at the time of the alleged malpractice and potentially could have obtained a board certification in emergency medicine, she was a "specialist" in emergency medicine under the holding in *Woodard*. Thus, plaintiffs would need a specialist in emergency medicine . . . . However, the specialist must have also devoted a majority of his practice during the preceding year to the active clinical practice of emergency medicine or the instruction of students. [*Id.* at 630.]

Neither *Woodard* nor *Reeves* addressed a situation in which, as here, the defendant physician was a resident. Again, Vashi was a physician resident who was practic-

ing in general surgery at the time of the occurrence. Applying the reasoning of *Woodard*, *Reeves* teaches that if "the specialty engaged in by the defendant physician during the course of the alleged malpractice" was outside the defendant physician's practice, that specialty is the "one most relevant standard of practice or care." *Id.* at 628. In the present case, Vashi was practicing general surgery at the time of the occurrence. Employing the *Reeves* reasoning and application of *Woodard* in the present case, because Vashi was practicing in general surgery at the time of the occurrence, the "one most relevant standard of practice or care" is general surgery. *Id.* Therefore, the relevant area of practice plaintiff challenges here is general surgery.

Essentially, one must look to the area of practice the plaintiff challenges in order to determine who has the capacity to offer an opinion regarding standard of care. There are three possibilities. First, if the area of practice being challenged is general practice and is not a specialty, then the plaintiff must offer qualifying testimony from a qualified general practitioner practicing in general practice pursuant to MCL 600.2169(1)(c). Second, if the area of practice being challenged is a specialty and the defendant physician is board-certified in the specialty that is being challenged, then MCL 600.2169(1)(a) is implicated and the plaintiff must offer qualifying testimony from a qualified practitioner who is also board-certified in the challenged area of practice.

The third situation is not as straightforward as the first two. It is a hybrid situation that is presented if the defendant physician is not board-certified in the challenged area of practice but is practicing within a specialty. This situation existed in *Reeves, supra,* where the area of practice being challenged was emergency medicine and the defendant physician was not board-

certified in emergency medicine. *Reeves, supra* at 623. The situation is also present in the instant case where the area of practice plaintiff challenges is general surgery and defendant physician is not board-certified in general surgery. The fact that the defendant physician in *Reeves* was board-certified in family medicine and defendant physician here is not board-certified in any specialty is made moot by the *Woodard*'s Court's explicit definition of a "specialist" as "somebody who can potentially become board certified." *Woodard, supra* at 561-562. Because Vashi clearly meets *Woodard*'s definition of "specialist," he does not fall under MCL 600.2169(1)(c), but rather MCL 600.2169(1)(a). Hence, for purposes of a matching specialty analysis as required by MCL 600.2169(1)(a) and *Tate, supra,* there is no difference between a defendant physician who is board-certified in a specialty but is practicing outside that specialty at the time of the alleged malpractice and a physician, like Vashi, "who can potentially become board certified" and is practicing in a specialty but is not board-certified in that specialty.

Thus, in either case, regardless of the defendant physician's specialty certification or level of practice classification in an irrelevant specialty or classification, the plaintiff must offer qualifying testimony from a qualified physician who has the capacity to offer an opinion regarding the standard of care in the relevant challenged area of practice. Plaintiff here must offer qualifying testimony from an expert who is a qualified physician in general surgery to testify regarding the standard of care and its breach. "It is not a prerequisite that that the expert be board-certified in [the challenged area of practice], but nothing in the statute requires that the expert be a "specialist" only, as opposed to a board-certified specialist." *Reeves, supra* at 629. Therefore, plaintiff here may offer qualifying tes-

timony from an expert who is a specialist or a board-certified specialist in the area of general surgery as long as the expert "can provide testimony on the appropriate standard of practice or care" and satisfies the "practice/instruction requirement." *Reeves, supra* at 629. The *Reeves* Court cited *Woodard* for the proposition that

> "MCL 600.2169(1)(b) provides that if the defendant physician is a specialist, the expert witness must have 'during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either . . . the active clinical practice of that specialty [or] [t]he instruction of students in an . . . accredited health professional school or accredited residency or clinical research program in the same specialty.' [*Reeves, supra* at 629, citing *Woodard, supra* at 565.]

In addition to satisfying the practice/instruction requirement of MCL 600.2169(1)(b), the plaintiff must present "qualifying" testimony from a "qualified" physician regarding standard of care in any of the three situations posed regarding general practitioners, board-certified specialists, and the hybrid situation. Our Supreme Court discussed this requirement in a recent remand order[3] in *Clerc v Chippewa Co War Mem Hosp,* 477 Mich 1067 (2007):

> The proponent of expert testimony in a medical malpractice case must satisfy the court that the expert is qualified under MRE 702, MCL 600.2955 and MCL 600.2169. The court's gatekeeper role under MRE 702
> "mandates a searching inquiry, not just of the data underlying expert testimony, but also of the manner in which the expert interprets and extrapolates from those data. Thus,

---

[3] We treat the Supreme Court's order as binding precedent for the reasons set forth in *Mullins v St Joseph Mercy Hosp,* 271 Mich App 503, 508-509; 722 NW2d 666 (2006).

it is insufficient for the proponent of [an] expert opinion merely to show that the opinion rests on data viewed as legitimate in the context of a particular area of expertise (such as medicine). The proponent must also show that any opinion based on those data expresses conclusions reached through reliable principles and methodology. [*Gilbert v DaimlerChrysler*, 470 Mich 749, 782 (2004).]"

Consistent with this role, the court "shall" consider all of the factors listed in MCL 600.2955(1). If applicable, the proponent must also satisfy the requirement of MCL 600.2955(2) to show that a novel methodology or form of scientific evidence has achieved general scientific acceptance among impartial and disinterested experts in the field.

In other words, in addition to satisfying the requirements of MCL 600.2169(1)(a) and (b), a plaintiff must affirmatively establish that his or her proffered expert is "qualified as an expert by knowledge, skill, experience, training, or education," pursuant to MRE 702. As part of this inquiry, the trial court must engage in the analysis set forth in MCL 600.2169(2), which requires the trial court to evaluate, at a minimum:

(a) The educational and professional training of the expert witness.

(b) The area of specialization of the expert witness.

(c) The length of time the expert witness has been engaged in the active clinical practice or instruction of the health profession or the specialty.

(d) The relevancy of the expert witness's testimony.

Not only must the plaintiff qualify his or her expert, he or she must also show that the actual expert testimony offered is based on the factual predicate knowledge required of the expert under MRE 703, which governs the bases of expert opinion testimony, and MCL 600.2955. Thus, the trial court is not only charged with engaging in a searching inquiry regarding the qualifications of the expert, but also the proposed testimony

pursuant to MRE 703 and MCL 600.2955. Specific to medical malpractice suits, MCL 600.2955 directs:

(1) In an action for the death of a person or for injury to a person or property, a scientific opinion rendered by an otherwise qualified expert is not admissible unless the court determines that the opinion is reliable and will assist the trier of fact. In making that determination, the court shall examine the opinion and the basis for the opinion, which basis includes the facts, technique, methodology, and reasoning relied on by the expert, and shall consider all of the following factors:

(a) Whether the opinion and its basis have been subjected to scientific testing and replication.

(b) Whether the opinion and its basis have been subjected to peer review publication.

(c) The existence and maintenance of generally accepted standards governing the application and interpretation of a methodology or technique and whether the opinion and its basis are consistent with those standards.

(d) The known or potential error rate of the opinion and its basis.

(e) The degree to which the opinion and its basis are generally accepted within the relevant expert community. As used in this subdivision, "relevant expert community" means individuals who are knowledgeable in the field of study and are gainfully employed applying that knowledge on the free market.

(f) Whether the basis for the opinion is reliable and whether experts in that field would rely on the same basis to reach the type of opinion being proffered.

(g) Whether the opinion or methodology is relied upon by experts outside of the context of litigation.

(2) A novel methodology or form of scientific evidence may be admitted into evidence only if its proponent establishes that it has achieved general scientific acceptance among impartial and disinterested experts in the field.

(3) In an action alleging medical malpractice, the provisions of this section are in addition to, and do not otherwise affect, the criteria for expert testimony provided in section 2169.

In sum, the searching inquiry into the bases of the expert's testimony under MRE 703 and MCL 600.2955 must ensure that the testimony being offered by the expert otherwise qualified under MCL 600.2169(1) is based on sufficient knowledge, skill, experience, training, or education in the challenged relevant specialty. If we were not to so hold, in the hybrid situation where the physician is practicing a specialty outside his or her own classification, it would be impossible for a physician of like qualification without the specialty knowledge, skill, experience, training, or education to offer standard of care testimony on the alleged misadventure. In other words, satisfying the matching qualifications requirement alone may not be sufficient to offer standard of care testimony because the standard of care testimony must be directed to the relevant area of inquiry that is outside the physician's classification when the physician is not practicing within his or her classification. Because Vashi was a resident, such an inquiry must include sufficient knowledge, skill, experience, training, or education in, and familiarity with, the practice of the discrete specialty by residents. *Bahr v Harper-Grace Hosps*, 448 Mich 135, 141; 528 NW2d 170 (1995) (holding that a specialist may testify regarding the conduct of residents if the specialist has knowledge of the applicable standard of care.)

For all of these reasons, we conclude that the trial court erred by granting summary disposition in favor of St. John. We therefore reverse and remand this matter to the trial court, so the trial court can: (1) determine whether Dr. Gordon has knowledge of the applicable standard of care and thus can be qualified

to testify as a matching expert under MCL 600.2169(1)(a); (2) determine whether Dr. Gordon meets the practice/instruction requirement of MCL 600.2169(1)(b); (3) determine if Dr. Gordon is "qualified as an expert by knowledge, skill, experience, training, or education" pursuant to MRE 702 while engaging in the analysis set forth in MCL 600.2169(2); and (4) determine if the actual expert testimony offered by Dr. Gordon is based on the factual predicate knowledge required of him as required by MRE 703 and MCL 600.2955.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.