# Order

**Michigan Supreme Court**
**Lansing, Michigan**

March 19, 2008

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

134749

BONNIE JEAN GONZALEZ, Personal
Representative of the Estate of CONDE
GONZALEZ,
          Plaintiff-Appellee,

v

ST. JOHN HOSPITAL & MEDICAL CENTER,
          Defendant-Appellant,

and

NORTHEAST SURGICAL ASSOCIATES,
P.C., PETER D. KOWYNIA, M.D., and
CHRISTOPHER N. VASHI, M.D.,
          Defendants.

SC: 134749
COA: 272093
Wayne CC: 05-506716-NH

_____/

On order of the Court, the application for leave to appeal the April 19, 2007 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

CORRIGAN, J., dissents and states as follows:

I would reverse the Court of Appeals and reinstate the trial court's order granting summary disposition in defendants' favor. The Court of Appeals incorrectly concluded that a resident physician must be held to the standard of a specialist under MCL 600.2169(1)(a) and this Court's decision in *Woodard v Custer,* 476 Mich 545 (2006).

Plaintiff alleges that the defendant resident physician, Dr. Christopher Vashi, negligently failed to properly diagnose and treat plaintiff's decedent's acute intra-abdominal hemorrhage while the decedent was a patient at defendant St. John Hospital. Vashi was a third-year surgical resident who evaluated the decedent on June 7, 2003. Previously—on April 8 and May 9, 2003—the decedent had undergone two abdominal surgeries to treat colon cancer. He returned to the hospital on June 7 after discovering that he was bleeding from a post-surgical drainage tube. Defendants ultimately

discovered a leak in the decedent's left iliac artery but, despite surgical intervention to repair the leak, the decedent died on June 8, 2003.

Plaintiff's sole expert was a board-certified specialist in surgery. Accordingly, the trial court granted summary disposition in defendants' favor, holding that a resident physician is neither a specialist nor held to the standards of a specialist. Rather, he is a general practitioner and, therefore, to establish the relevant standard of care a plaintiff must present the testimony of a general practitioner or someone who instructs students in the same health profession in which the resident is licensed. MCL 600.2169(1)(c).

The Court of Appeals initially affirmed the trial court but, it reversed on reconsideration. *Gonzalez v St John Hosp & Med Ctr (On Reconsideration),* 275 Mich App 290 (2007). The panel concluded that, "[u]nder *Woodard*'s definition of specialist, any physician who can potentially become board-certified in a branch of medicine or surgery in which he or she practices is defined as a 'specialist' for purposes of MCL 600.2169(1)." *Gonzalez, supra* at 298. Accordingly, because Vashi is a physician "who limited his training to surgery, and who could potentially become board-certified on completion of his residency, at the time decedent died, Vashi would be considered a 'specialist.'" *Id.* at 298-299. The panel also held that *Woodard* overruled the contrary holding of the Court of Appeals in *Bahr v Harper-Grace Hosps,* 198 Mich App 31, 34 (1993), rev'd on other grounds 448 Mich 135 (1995) ("It is clear that interns and residents are not 'specialists,' and, therefore, . . . the applicable standard of care for such persons is that of the local community or similar communities.").

I disagree with the Court of Appeals conclusion because it misinterprets both *Woodard* and the relevant statutory language. The distinction between specialists and general practitioners is significant because specialists and general practitioners are subject to different standards under Michigan's malpractice statutes. If a defendant is a general practitioner, a medical malpractice plaintiff must show that he "failed to provide the plaintiff the recognized standard of acceptable professional practice or care in the community in which the defendant practices or in a similar community . . . ." MCL 600.2912a(1)(a). If the defendant is a specialist, a plaintiff must show that he "failed to provide the recognized standard of practice or care within that specialty as reasonably applied in light of the facilities available in the community or other facilities reasonably available under the circumstances . . . ." MCL 600.2912a(1)(b).

In *Woodard*, we considered the definition of "specialist," which is not defined by the relevant statutes. We concluded:

> *Dorland's Illustrated Medical Dictionary* (28th ed) defines a "specialist" as "a physician whose practice is limited to a particular branch of medicine or surgery, especially one who, by virtue of advanced training, is certified by a specialty board as being qualified to so limit his practice."

. . . Both the dictionary definition of "specialist" and the plain language of § 2169(1)(a) make it clear that a physician can be a specialist who is not board certified. They also make it clear that a "specialist" is somebody who can potentially become board certified. Therefore, a "specialty" is a particular branch of medicine or surgery in which one can potentially become board certified. Accordingly, if the defendant physician practices a particular branch of medicine or surgery in which one can potentially become board certified, the plaintiff's expert must practice or teach the same particular branch of medicine or surgery. [*Woodard, supra* at 561-562.]

*Woodard* addressed the meaning of "specialist" for purposes of determining how the term applies when a defendant physician practices in a specialty or subspecialty but is not board-certified as a specialist. *Id.* at 560-562. In light of this context, the Court of Appeals applies *Woodard* too broadly in this case to mean that the term "specialist" includes *any* physician who practices a particular branch of medicine "in which one can potentially become board certified." *Id.* at 561-562; *Gonzalez, supra* at 298-299. The more relevant definition, for our purposes, is the basic definition of "specialist" as "a physician whose *practice* is limited to a particular branch of medicine or surgery, especially one who, by virtue of advanced training, is certified by a specialty board as being qualified to so limit his practice." *Woodard, supra* at 561, quoting *Dorland's Illustrated Medical Dictionary* (28th ed). A resident physician simply does not qualify under this definition. Indeed, *Dorland's* separately defines "resident" as "a graduate and licensed physician *receiving training in a specialty* in a hospital." *Dorland's Illustrated Medical Dictionary* (29th ed) (emphasis added). Because a resident is *receiving training in a specialty*, by definition he is not yet a specialist. Further, such an overbroad application of *Woodard* would largely eliminate the statutory distinction between specialists and general practitioners altogether; any general practitioner who has the "potential" to become board-certified will automatically qualify as a specialist.

Therefore, I agree with the trial court that Vashi must be considered a general practitioner because he was still a resident at the time of the alleged malpractice. Accordingly, plaintiff was required to present an expert on the standard of care who,

during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:

(*i*) Active clinical practice as a general practitioner.

(*ii*) Instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health

profession in which the party against whom or on whose behalf the testimony is offered is licensed.  [MCL 600.2169(1)(c).]

Because plaintiff's expert did not meet either of these criteria, the trial court properly granted summary disposition in defendants' favor.



I,  Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

March 19, 2008

_____
Clerk

d0312