*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DAVID M. SUNDERLIK,

          Plaintiff-Appellee,

UNPUBLISHED
March 21, 2019

v

THOMAS E. BARBIERI, M.D.,

          Defendant,

No. 340178
Wayne Circuit Court
LC No. 16-005353-NH

and

WILLIAM BEAUMONT HOSPITAL,

          Defendant-Appellant.

Before: MURRAY, C.J., and GADOLA and TUKEL, JJ.

PER CURIAM.

Defendant William Beaumont Hospital[1] appeals by leaved granted an order denying its motion for summary disposition, which it filed under MCR 2.116(C)(7) and (10). We hold that the trial court properly denied the motion under MCR 2.116(C)(7), but should have granted the motion under MCR 2.116(C)(10). Accordingly, we reverse and remand for entry of judgment in favor of defendant.

Plaintiff David M. Sunderlik underwent a diagnostic procedure (an arthrogram) on his hip at WBH in August 2014. Thomas E. Barbieri, M.D., an interventional radiologist, conducted the procedure, with assistance from Kaitlyn Karsten, a radiology technologist. After the procedure, plaintiff developed an infection in his hip, and he sued Dr. Barbieri and WBH for

---

[1] Defendant Thomas E. Barbieri, M.D., is not a party to this appeal. For ease of reference in this opinion, we employ the term "defendant" (or the acronym "WBH") to refer to William Beaumont Hospital.

medical malpractice. During the course of discovery, plaintiffs' contention focused more on the assertion that Karsten's failure to wear a mask during the procedure caused the infection, but that Dr. Barbieri, as an agent of WBH, was negligent for failing to ensure that Karsten wore a mask. The trial court denied defendants' later filed motion for summary disposition.

On appeal, defendant asserts that the trial court should have granted its motion for summary disposition because, although plaintiff's claim was ultimately based only on Karsten's negligence, he presented an affidavit of merit and expert testimony from a radiologist, rather than a radiology technologist like Karsten. Further, defendant argues that dismissal was appropriate because plaintiff failed to present sufficient evidence creating a genuine issue of material fact for trial regarding medical malpractice.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). An action may be dismissed under MCR 2.116(C)(7) when the claim is barred by the statute of limitations. MCR 2.116(C)(7). In reviewing a motion brought under this subrule, a court reviews the documentary evidence submitted by the parties, and accepts the contents of the complaint as true unless contradicted by evidence submitted by the movant. *Maiden*, 461 Mich at 119. "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Id*. at 120. A court considers the "affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the party opposing the motion." *Id*. "When a motion under subrule (C)(10) is made and supported . . . an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4). "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Maiden*, 461 Mich at 120.

We conclude first that the trial court did not err when it denied defendant's motion for summary disposition under MCR 2.116(C)(7), because plaintiff presented a sufficient affidavit of merit in support of his medical malpractice claim. MCL 600.2912d(1)[2] states, in pertinent part:

> [T]he plaintiff in an action alleging medical malpractice or, if the plaintiff is represented by an attorney, the plaintiff's attorney shall file with the complaint an affidavit of merit signed by a health professional who the plaintiff's attorney reasonably believes meets the requirements for an expert witness under [MCL 600.]2169. The affidavit of merit shall certify that the health professional has reviewed the notice and all medical records supplied to him or her by the

---

[2] The parties do not dispute that the limitations period for plaintiff's lawsuit expired before the trial court's ruling, and that if the affidavit of merit did not satisfy the requirements of MCL 600.2912d(1), the lawsuit must be dismissed. See generally *Ligons v Crittenton Hosp*, 490 Mich 61, 89; 803 NW2d 271 (2011).

plaintiff's attorney concerning the allegations contained in the notice and shall contain a statement of each of the following:

> (a) The applicable standard of practice or care.

> (b) The health professional's opinion that the applicable standard of practice or care was breached by the health professional or health facility receiving the notice.

> (c) The actions that should have been taken or omitted by the health professional or health facility in order to have complied with the applicable standard of practice or care.

> (d) The manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice.

MCL 600.2169 provides, in relevant part:

> (1) In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:

> * * *

> (b) . . . during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:

> (*i*) The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, the active clinical practice of that specialty.

The parties spend considerable time in their appellate briefs, as they did in the trial court, discussing whether the affidavit of merit signed by Daniel Link, M.D., an interventional radiologist like Dr. Barbieri, satisfied the affidavit-of-merit requirement of MCL 600.2912d(1) for a claim alleging medical malpractice against Karsten.[3] However, plaintiff did not list Karsten as a defendant in his suit, and a critical reading of the complaint reveals that his claims of vicarious liability against WBH are based on the actions of Dr. Barbieri, not Karsten.

---

[3] The parties agree that an unlicensed person such as Karsten may be subject to a medical malpractice claim if assisting in medical care and treatment as an employee of a licensed health facility such as WBH. See MCL 600.5838a(1) (discussing "a claim based on the medical malpractice of a person or entity who is or who holds himself or herself out to be . . . an employee or agent of a licensed health facility . . .").

-3-

The complaint, in delineating WBH's duties, refers to WBH's alleged duty to implement protocols and, when discussing "agency principles and/or the doctrine of respondeat superior," specifically refers only to Dr. Barbieri's actions. In *Nippa v Botsford Gen Hosp (On Remand)*, 257 Mich App 387; 668 NW2d 628 (2003), this Court stated, "The law treats the principal and the agent as sharing a single identity, transporting the acts of the doctors (the agents) to the hospital (the principal)," *id*. at 392, and "[a] plaintiff must submit with a medical-malpractice complaint against an institutional defendant an affidavit of merit from a physician who specializes or is board-certified in the same specialty as that of the institutional defendant's agents involved in the alleged negligent conduct," *id*. at 393. Implicit in these statements is that the complaint must specify the alleged negligent conduct committed by the agent, and the only "acts" by an "agent" mentioned in the complaint as comprising the basis for vicarious liability against WBH are the acts of Dr. Barbieri.[4] And we decline to conclude that the lawsuit against WBH encompassed Karsten as a negligent agent merely because the complaint broadly states that WBH "is liable for the negligent and tortious acts of its agents, servants and/or employees, *including but not limited to* . . . Thomas E. Barbieri . . . ." (Emphasis added.) Accordingly, despite the arguments made on appeal, Karsten, quite simply, was not the agent specified by plaintiff.[5]

Viewing this case through the lens that plaintiff alleged medical malpractice against Dr. Barbieri and WBH, not Karsten, we hold that the affidavit of merit submitted by plaintiff in support of his claim was sufficient under MCL 600.2912d. In the affidavit of merit, Dr. Link asserted that the standard of care required Dr. Barbieri to, among other things, ensure that all persons present during the arthrogram were using a strict sterile technique, and that breach of the standard of care caused plaintiff's infection. In addition, it is undisputed that Dr. Link was an interventional radiologist like Dr. Barbieri. Thus, the affidavit of merit fulfilled the requirements of MCL 600.2912d(1) as read in conjunction with MCL 600.2169, and the trial court did not err by declining to dismiss plaintiff's lawsuit under MCR 2.116(C)(7).

---

[4] The complaint refers to "agents" in discussing the implementation of protocols, but the "protocol" theory is not at issue on appeal. Plaintiff is not arguing that WBH is liable because of an institutional failure to have certain protocols in place for procedure-room personnel. Instead, plaintiff argues that an individual person (either Karsten, by failing to wear a mask) or Dr. Barbieri (by failing to ensure that Karsten wore a mask) violated a standard of care and caused the hip infection.

[5] No party has raised any issues about a potential amendment to the complaint to include Karsten. Further, this case is distinguishable from *McElhaney v Harper-Hutzel Hosp*, 269 Mich App 488, 495; 711 NW2d 795 (2006), a case in which discovery revealed that a nursing midwife had been the perpetrator of the alleged malpractice, because in that case, the plaintiff's complaint specifically alleged that the defendant hospital was liable for the actions of its "nursing midwife."

The trial court did err, however, by failing to dismiss plaintiff's lawsuit under MCR 2.116(C)(10).[6] "In a medical malpractice case, the plaintiff bears the burden of proving: (1) the applicable standard of care, (2) breach of that standard by defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury. Failure to prove any one of these elements is fatal." *Wischmeyer v Schanz*, 449 Mich 469, 484; 536 NW2d 760 (1995) (citations omitted). Expert testimony is ordinarily required in medical malpractice cases to establish the applicable standard of care and to demonstrate a breach of that standard. *Gonzalez v St John Hosp & Med Ctr (On Reconsideration)*, 275 Mich App 290, 294-295; 739 NW2d 392 (2007). And "[i]n order to proceed against a hospital on a theory of vicarious liability, a plaintiff must offer expert testimony to establish specific breaches of the standards of care applicable to the individuals involved in the plaintiff's care and treatment alleged to be deficient." *Id*. at 295.[7]

Plaintiff failed to demonstrate a genuine issue of material fact with regard to the applicable standard of care, breach, and causation. Plaintiff's theory is that Dr. Barbieri, as an

---

[6] We note that in the initial filing of its motion for summary disposition, defendant clearly focused on the alleged deficiencies with the affidavit of merit and argued that dismissal was required because of those deficiencies and not because of deficiencies in establishing a genuine issue of material fact for trial. In response to defendant's motion, however, plaintiff emphasized that a question of fact existed, and referred to the "evidence in the record," arguing that the trial court must "allow the case to proceed to trial." And in reply, defendant argued, in part, that causation was speculative, and that in addition to filing a deficient affidavit of merit, plaintiff "failed to provide qualified expert testimony to support his case." Further, in ruling on the motion, the court stated that plaintiff's attorney had a reasonable belief that the expert who filed the affidavit of merit "satisfied the requirements of MCL 600.2169," but also mentioned multiple times that there was a "genuine issue of material fact," stating: "The [c]ourt finds that there is a genuine issue of material fact regarding the standard of care provided to . . . [p]laintiff. Defendant's motion pursuant to MCR 2.117(C)(10) [sic] is also denied."

[7] Expert testimony is not required if the elements of res ipsa loquitur are satisfied or if the negligence claimed is "a matter of common knowledge and observation[.]" *Thomas v McPherson Community Health Ctr*, 155 Mich App 700, 705; 400 NW2d 629 (1986) (quotation marks and citation omitted). Plaintiff is not seeking to invoke res ipsa loquitur. Testimony established that the type of infection plaintiff incurred sometimes occurs in the absence of negligence. Also, it cannot reasonably be said that the negligence claimed here is a matter of common knowledge and observation. The crux of plaintiff's negligence allegation is the failure by Karsten to wear a mask during the arthrogram, leading to an infection in plaintiff's hip because of the transfer of oral bacteria. Dr. Barbieri testified that in the 1980s and 1990s he did not use masks during arthrograms because that is how they "w[ere] done" in that period. Dr. Link testified that he was not sure if everyone performing arthrograms wore masks as a matter of standard procedure. Especially in light of this testimony, it is not reasonable to assume that the average person would know that the failure to wear a mask during the procedure—involving a needle, just unwrapped, being inserted into plaintiff's hip—would likely lead to a serious infection of oral bacteria.

agent of WBH, breached the standard of care for an interventional radiologist by failing to ensure that Karsten wore a mask during the arthrogram procedure. However, Dr. Link's testimony regarding the standard of care is at best highly equivocal and contradictory. Dr. Link stated that lack of a mask would "probably [be] below the standard of care" and that "if the technologist was not wearing a mask, that would be a criticism," but at another point in his testimony admitted that he did not even know the applicable standard of care. And, at yet another point, he testified that he did not think the standard of care required the wearing of masks during arthrograms. Thus, after reviewing Dr. Link's testimony as a whole, we conclude that it was far too contradictory to raise a genuine issue of material fact regarding the "standard of care" elements of a medical malpractice claim. *Wischmeyer*, 449 Mich at 484.

Moreover, plaintiff's claim fails with regard to the elements of breach and causation. Dr. Barbieri testified that although he had no specific memory of plaintiff's arthrogram, during the period encompassing plaintiff's procedure he never performed an arthrogram without sterile drapes or a mask. Karsten likewise had no specific recollection of plaintiff's arthrogram, and could not recall if she had been wearing a mask. Further, plaintiff could not remember if Karsten wore a mask during his procedure, recalling only that she did not have a mask on "[w]hen she came and got [him] and walked [him] in the room." With respect to causation, Dr. Link simply could not say what caused the transfer of oral bacteria to plaintiff's hip. He stated, "I don't think we know where the infection comes from," and reiterated later in his testimony that he did not know "the source" of the bacteria. Dr. Link also opined that he did not know if plaintiff's infection would have been prevented even if Karsten had worn a mask, admitting that "we don't know where the inoculum came from" and that the contamination could have resulted from the use of a room that had been used earlier for a "case[] that w[as] infected." Another expert witness proffered by plaintiff, Daniel Morgan, M.D., testified that the bacteria could have come from "anyone's mouth, the patient or the hospital employees," and "could have been transiently on the skin . . . of any one of those people." Dr. Morgan also opined that the lack of a mask on a doctor during an arthrogram (and, by reasonable inference, the lack of a mask on a technician who is present) would not be likely to cause an infection.

"Circumstantial evidence can be sufficient to establish a genuine issue of material fact, but mere conjecture or speculation is insufficient." *McNeill-Marks v MidMichigan Med Ctr-Gratiot*, 316 Mich App 1, 16; 891 NW2d 528 (2016). Plaintiff's evidence presented only speculation regarding the element of causation and for this reason the trial court should have granted defendant's motion for summary disposition under MCR 2.116(C)(10). See MCR 2.116(G)(4).[8]

---

[8] This conclusion holds even if one assumes, arguendo, that plaintiff (1) properly named Karsten as a negligent agent in the complaint and (2) submitted a sufficient affidavit of merit with regard to a claim against Karsten. In other words, sufficient evidence of causation is lacking even if one views this case as involving the negligence of Karsten and not the negligence of Dr. Barbieri. We note that in light of our conclusions, we need not address defendant's arguments regarding whether the doctrine of "captain of the ship" applies in Michigan.

Reversed and remanded for entry of judgment in favor of defendant. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Michael F. Gadola
/s/ Jonathan Tukel