*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF LAMARR GREEN, by JULIE
BRESKO, Personal Representative,

Plaintiff-Appellee,

v

BASHAR YALDO, M.D.,

Defendant,

and

SHAHRZAD ABBASSI-RAHBAR and ST.
JOSEPH MERCY-OAKLAND,

Defendants-Appellants.

UNPUBLISHED
May 25, 2023

No. 357931
Oakland Circuit Court
LC No. 2020-179077-NH

Before: CAVANAGH, P.J., and K. F. KELLY and GARRETT, JJ.

PER CURIAM.

Defendants Shahrzad Abbassi-Rahbar (Dr. Abbassi) and St. Joseph Mercy-Oakland (St. Joseph) appeal by leave granted[1] the order of the trial court denying their motion for summary disposition under MCR 2.116(C)(10). Because we agree that plaintiff's expert witness was not qualified to testify against Dr. Abbassi, we reverse the trial court's order as it relates to that issue. In all other respects, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

The decedent, LaMarr Green, was referred to defendant Bashar Yaldo, M.D., a board-certified general surgeon, for treatment of a bilateral inguinal hernia in 2017. Dr. Yaldo performed

---

[1] *Estate of Green v Yaldo*, unpublished order of the Court of Appeals, entered December 1, 2021 (Docket No. 357931).

-1-

a robotic bilateral inguinal hernia repair at St. Joseph on February 2, 2018, and Green was discharged the same day. On the evening of February 5, 2018, Green returned to St. Joseph's with complaints of abdominal pain. He also reported throat discomfort, his recent hernia surgery, and a lack of bowel movements for four to five days. An x-ray revealed a possible early or partial small bowel obstruction, and Green was admitted to the hospital. Despite limited periods of improvement, Green's condition deteriorated and he passed away approximately two weeks later.

Plaintiff initiated this action alleging medical malpractice by Dr. Yaldo and Dr. Abbassi, who was then a resident in St. Joseph's general surgery program and participated in Green's treatment as part of the surgical critical care team. St. Joseph was named as a defendant because it "affirmatively held itself out as the employer of, and responsible for the acts or non-actions of" Dr. Yaldo and Dr. Abbassi.

Defendants moved for summary disposition under MCR 2.116(C)(10), first arguing that St. Joseph could not be held vicariously liable because Dr. Yaldo was an independent contractor, and plaintiff did not have any evidence supporting an ostensible agency theory. Defendants also sought summary disposition of claims related to Dr. Abbassi's treatment because plaintiff's proposed expert, Dr. Jason Nirgiotis, was not qualified to testify regarding Dr. Abbassi's specialty. The trial court denied defendants' motion, reasoning that questions of fact existed regarding Dr. Yaldo's ostensible agency and Dr. Abbassi's specialty. This appeal followed.

## II. STANDARD OF REVIEW

We review a trial court's ruling decision on a motion for summary disposition de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Trueblood Estate v P&G Apartments, LLC*, 327 Mich App 275, 284; 933 NW2d 732 (2019), quoting *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).]

"A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *El-Khalil*, 504 Mich at 160 (quotation marks and citation omitted).

## III. OSTENSIBLE AGENCY

Defendants argue the trial court erred when it denied summary disposition in their favor regarding the claims arising from Dr. Yaldo's treatment because Green and Dr. Yaldo had a physician-patient relationship before Green's February 5, 2018 hospitalization, which precluded a finding of ostensible agency. Defendants also assert that plaintiff failed to present evidence

demonstrating that Green formed a reasonable belief regarding Dr. Yaldo's agency or that St. Joseph did anything to hold out Dr. Yaldo as its agent. We disagree.

"Generally, Michigan law will impose liability upon a defendant only for his or her own acts of negligence, not the tortious conduct of others." *Laster v Henry Ford Health Sys*, 316 Mich App 726, 734; 892 NW2d 442 (2016). But in a medical malpractice action, a hospital can be held liable for the negligence of its employees under a theory of respondeat superior or its independent contractors under an ostensible agency theory. See *id*. at 734-737.

In *Grewe v Mt Clemens Gen Hosp*, 404 Mich 240, 253-255; 273 NW2d 429 (1978), the Michigan Supreme Court concluded that the jury in that case was free to find the defendant hospital liable for the conduct of an independent contractor because the plaintiff looked to the hospital for treatment, there was no evidence of a preexisting relationship between the plaintiff and those who treated him, nor was there record evidence that would have put the plaintiff on notice that the independent contractor at issue was not an employee of the hospital. The Court observed:

> Generally speaking, a hospital is not vicariously liable for the negligence of a physician who is an independent contractor and merely uses the hospital's facilities to render treatment to his patients. However, if the individual looked to the hospital to provide him with medical treatment and there has been a representation by the hospital that medical treatment would be afforded by physicians working therein, an agency by estoppel can be found.

> In our view, the critical question is whether the plaintiff, at the time of his admission to the hospital, was looking to the hospital for treatment of his physical ailments or merely viewed the hospital as the situs where his physician would treat him for his problems. A relevant factor in this determination involves resolution of the question of whether the hospital provided the plaintiff with [the independent contractor] or whether the plaintiff and [the independent contractor] had a patient-physician relationship independent of the hospital setting. [*Grewe*, 404 Mich at 250-251 (citations omitted).]

The Court then considered caselaw from other jurisdictions, noting a California appellate court's articulation of three elements required for a finding of ostensible agency particularly useful: (1) the patient must have a reasonable belief regarding the ostensible agent's authority; (2) that belief must be generated by an act or neglect by the alleged principal; and (3) the patient relying on the ostensible agency is not guilty of negligence. *Id*. at 252-253, citing *Stanhope v Los Angeles College of Chiropractic*, 54 Cal App 2d 141 (1942).

This Court later held that the three-part test cited in *Grewe* identified the controlling elements for establishing ostensible agency. See *Chapa v St Mary's Hosp of Saginaw*, 192 Mich App 29, 33-34; 480 NW2d 590 (1991). In *Chapa*, we also clarified that, despite the Michigan Supreme Court's initial reference to a "critical question," *Grewe* did not establish a rule of vicarious liability "merely because the patient 'looked to' the hospital at the time of admission . . . ." *Id*. at 32-33. The *Chapa* Court viewed *Grewe*'s "critical question" as reflective of the case-specific facts at issue in *Grewe*, wherein the plaintiff was improperly treated by two on-call physicians with whom he had no previous relationship. *Id*. at 32. In contrast, the plaintiff

in *Chapa* went to a hospital emergency room and initially received treatment from an on-call physician, but his inpatient care was entrusted to his family physician the next day. *Id*. at 30-31. The negligent acts were committed by the family physician and his associate several days later. *Id*. at 31, 33. The evidence was unclear as to whether the family doctor took over at the urging of the plaintiff's family or whether the doctor was provided by the hospital. *Id*. at 31, 33, 36. Under these circumstances, there was a question of fact regarding the existence of ostensible agency. See *id*. at 34 (affirming denial of summary disposition and motion for directed verdict).

As the we emphasized in *Chapa*, *Grewe* instructs that courts must focus on "[t]he reasonableness of the patient's belief in light of the representations and actions of the hospital . . . ." *Id*. at 34. However, "an independent relationship between a doctor and a patient that preceded a patient's admission to a hospital precludes a finding of ostensible agency, unless the acts or omissions of the hospital override the impressions created by the preexisting relationship and create a reasonable belief that the doctor is an agent of the hospital." *Zdrojewski v Murphy*, 254 Mich App 50, 66; 657 NW2d 721 (2002).

Here, Green was referred to Dr. Yaldo by another physician for treatment of his bilateral inguinal hernia, and Dr. Yaldo performed a robotic repair of the hernia on February 2, 2018, at St. Joseph. Thus, it is undisputed that Green had a physician-patient relationship with Dr. Yaldo before his admission to St. Joseph on February 5, 2018. The question is, therefore, whether St. Joseph's acts or omissions during Green's subsequent admission could result in ostensible agency, despite the preexisting relationship. *Id*.; see also *Chapa*, 192 Mich App at 33-34 (noting elements of ostensible agency).

The trial court did not err by concluding that the issue of ostensible agency presented a question of fact that precluded summary disposition. Although Green and Dr. Yaldo had an established relationship that predated Green's February 5, 2018 admission, there is no evidence that he sought treatment from Dr. Yaldo specifically any time after the February 2, 2018 surgery. Green presented to the St. Joseph emergency department three days after his surgery with complaints of abdominal pain, throat discomfort, and a lack of bowel movements for several days. He reported his recent hernia surgery during the admission process, but his medical records provide no indication that he attributed his symptoms to a postsurgical complication or that he asked to be seen by Dr. Yaldo. To the contrary, the records reflect Green's partner reported that "everything went well with this surgery and immediately post-op," until Green began vomiting the day after the surgery. Green's partner opined that Green was suffering from food poisoning and decided to take Green to the hospital at the recommendation of Green's primary care physician. Dr. Yaldo was later informed of Green's admission by a St. Joseph resident. Dr. Yaldo took part in Green's treatment thereafter and was designated within St. Joseph's medical records as Green's attending physician.

Viewing the evidence in the light most favorable to plaintiff, reasonable minds could disagree about the existence of ostensible agency. On one hand, Dr. Yaldo's status as Green's initial surgeon is strong evidence that Green should have viewed Dr. Yaldo as his own physician, rather than an agent of St. Joseph. On the other hand, the record suggests that Green and his partner did not think his symptoms were related to the surgery and they went to St. Joseph on the advice of Green's primary care physician—not because that was where the surgery was performed or because Green expected Dr. Yaldo would be at St. Joseph. Combined with the absence of any

indication that Green or his family sought Dr. Yaldo's involvement in Green's care, a fact-finder could determine that Green had a reasonable belief that Dr. Yaldo was acting as St. Joseph's agent. The fact that Dr. Yaldo's postsurgical involvement in the case was instigated by a St. Joseph resident alerting Dr. Yaldo to Green's hospitalization is significant and could be accepted as evidence supporting the second element of ostensible agency.

Defendant asserts that the Michigan's Supreme Court's recent order in *Markel v William Beaumont Hosp*, ___ Mich ___; ___ NW2d ___ (2022), mandates reversal because, according to defendant, the Supreme Court held in that case where there is a preexisting relationship between the doctor and the plaintiff, ostensible agency cannot be present. We disagree that *Markel* stands for such a proposition. In *Markel*, the Supreme Court reversed this Court's opinion concluding we applied the wrong standard regarding ostensible agency under *Grewe* when we determined the plaintiff's belief that the doctor was an agent of the hospital was unreasonable because the plaintiff could not remember which doctor treated her. The Supreme Court found this to be an improper application of the case's holding because under *Grewe*, "the patient's belief that a doctor is the hospital's agent is reasonable unless dispelled in some manner by the hospital or the treating physician." *Markel*, ___ Mich at ___. Thus, the issue in *Markel* was not whether there was a preexisting relationship between the plaintiff and doctor, but rather whether the hospital did anything to dispel the plaintiff's reasonable belief that the doctor was not its agent. We decline to read *Markel* more broadly than this.

Accordingly, the trial court did not err when it concluded that the issue of ostensible agency presented a genuine issue of material fact, and we affirm the trial court's order in that regard.

## IV. EXPERT QUALIFICATION UNDER MCL 600.2169

Next, defendants assert that plaintiff's standard-of-care expert was not qualified to testify against Dr. Abbassi. Defendants also contend that plaintiff was unable to establish a material question of fact regrading the standard of care applicable to Dr. Abbassi or her breach of it. We agree.[2]

A medical malpractice claim must generally be supported by expert testimony regarding the applicable standard of care and the defendant's breach of that standard. *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016). MCL 600.2169(1) outlines the requirements a proposed expert must meet to be qualified to provide standard-of-care testimony in a medical malpractice action. *Rock v Crocker*, 499 Mich 247, 260; 884 NW2d 227 (2016). In pertinent part, the statute provides that the expert must be a licensed health professional meeting the following criteria:

> (a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony

---

[2] Because we agree that Dr. Nirgiotis did not satisfy the statutory criteria for qualification of an expert witness in a medical malpractice action, it is unnecessary for us to determine whether his opinions were sufficient to establish that Dr. Abbassi breached the standard of care.

-5-

is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.

(b) Subject to subdivision (c), during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:

(*i*) The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, the active clinical practice of that specialty.

(*ii*) The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.

(c) If the party against whom or on whose behalf the testimony is offered is a general practitioner, the expert witness, during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:

(*i*) Active clinical practice as a general practitioner.

(*ii*) Instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed. [MCL 600.2169(1)(a) through (c)(*ii*).]

"[T]he plaintiff's expert witness must match the one most relevant standard of practice or care—the specialty engaged in by the defendant physician during the course of the alleged malpractice, and, if the defendant physician is board certified in that specialty, the plaintiff's expert must also be board certified in that specialty." *Woodard v Custer*, 476 Mich 545, 560; 719 NW2d 842 (2006). A specialist is "somebody who can potentially become board certified," though board certification was not required to be deemed a specialist, while a "specialty" refers to "a particular branch of medicine or surgery in which one can potentially become board certified." *Id*. at 560-561. And if the defendant physician specializes in a subspecialty, so too must the proposed expert in order to satisfy the "same specialty" requirement in MCL 600.2169(1)(a). *Id*. at 562.

In *Reeves v Carson City Hosp (On Remand)*, 274 Mich App 622, 623; 736 NW2d 284 (2007), the plaintiffs sued a physician who treated the plaintiff patient in an emergency room setting. Although the defendant held a board certification in family medicine, the plaintiffs relied on an expert who was board-certified in emergency medicine. *Id*. The plaintiffs reasoned that their expert was qualified because the defendant was practicing emergency medicine at the relevant time, rendering her family medicine credentials irrelevant. *Id*. at 624. We agreed, noting that the defendant was practicing outside the field of her board certification at the time of the alleged malpractice, and the pertinent specialty was dictated by "the specialty engaged in by the defendant

-6-

physician during the course of the alleged malpractice . . . ." *Id*. at 628 (quotation marks and citation omitted). Because the defendant was practicing emergency medicine at the time of the alleged malpractice and could potentially become board-certified in that specialty, this Court held that she was a specialist in emergency medicine and that the plaintiff's expert must also be a specialist in emergency medicine to satisfy MCL 600.2169. *Reeves*, 274 Mich App at 630.

In *Gonzalez v St John Hosp & Med Ctr (On Reconsideration)*, 275 Mich App 290; 739 NW2d 392 (2007), this Court considered how the same specialty requirement applied to a resident. We noted that the definition of a specialist identified by the Michigan Supreme Court in *Woodard* referred to a physician, "which necessarily includes those physicians who are also residents." *Id*. at 298. Consequently, we held that "those physicians who are residents and limit their training to a particular branch of medicine or surgery and who can potentially become board-certified in that specialty are specialists for purposes of the analysis under MCL 600.2169(1)." *Id*. at 299.

Summarizing the foregoing, the *Gonzalez* Court explained:

> Essentially, one must look to the area of practice the plaintiff challenges in order to determine who has the capacity to offer an opinion regarding standard of care. There are three possibilities. First, if the area of practice being challenged is general practice and is not a specialty, then the plaintiff must offer qualifying testimony from a qualified general practitioner practicing in general practice pursuant to MCL 600.2169(1)(c). Second, if the area of practice being challenged is a specialty and the defendant physician is board-certified in the specialty that is being challenged, then MCL 600.2169(1)(a) is implicated and the plaintiff must offer qualifying testimony from a qualified practitioner who is also board-certified in the challenged area of practice.

> The third situation is not as straightforward as the first two. It is a hybrid situation that is presented if the defendant physician is not board-certified in the challenged area of practice but is practicing within a specialty. This situation existed in *Reeves*, *supra*, where the area of practice being challenged was emergency medicine and the defendant physician was not board-certified in emergency medicine. *Reeves*, *supra* at 623. The situation is also present in the instant case where the area of practice plaintiff challenges is general surgery and defendant physician is not board-certified in general surgery. The fact that the defendant physician in *Reeves* was board-certified in family medicine and defendant physician here is not board-certified in any specialty is made moot by the *Woodard*'s [sic] Court's explicit definition of a "specialist" as " somebody who can potentially become board certified." *Woodard*, *supra* at 561-562. Because [the defendant resident] clearly meets *Woodard*'s definition of "specialist," he does not fall under MCL 600.2169(1)(c), but rather MCL 600.2169(1)(a). Hence, for purposes of a matching specialty analysis as required by MCL 600.2169(1)(a) and *Tate*, *supra*, there is no difference between a defendant physician who is board-certified in a specialty but is practicing outside that specialty at the time of the alleged malpractice and a physician, like [the defendant resident], "who can potentially become board certified" and is practicing in a specialty but is not board-certified in that specialty. [*Id*. at 302-303.]

Here, Dr. Abbassi was a resident in St. Joseph's general surgery program. But during the period of Green's hospitalization, Dr. Abbassi was in the midst of a short-term rotation in the surgical critical care service—a requirement of the general surgery program—and her involvement in Green's care was strictly in that capacity. General surgery and surgical critical care are distinct specialties for purposes of MCL 600.2169(1) because they are "particular branch[es] of medicine or surgery in which one can *potentially* become board certified." *Woodard*, 476 Mich at 561 (emphasis added).

Under *Reeves*, the fact that Dr. Abbassi was not actually pursuing board certification in surgical critical care is irrelevant because it is a specialty in which Dr. Abbassi could potentially obtain a board certification, as well as the specialty in which Dr. Abbassi was practicing at the time of the occurrence. See *Reeves*, 274 Mich App at 629-630. Nor is her status as a resident relevant, as a specialist need not be board-certified. See *Woodard*, 476 Mich at 561; *Gonzalez*, 275 Mich App at 298-299. Thus, the trial court erred when it denied defendant's motion for summary disposition as to those claims arising from Dr. Abbassi's treatment on the basis of evidence indicating that Dr. Abbassi practiced in both surgical critical care and general surgery. *Woodard*, *Gonzalez*, and *Reeves* compel the conclusion that Dr. Abbassi was a specialist practicing in surgical critical care at the time of the alleged malpractice. Dr. Nirgiotis was not a specialist in surgical critical care and was, therefore, not qualified under MCL 600.2169(1)(a) to testify about the standard of care applicable to Dr. Abbassi. And because plaintiff did not have an expert who met the requirements of MCL 600.2169(1)(a) relative to Dr. Abbassi, the trial court should have granted summary disposition in favor of defendants with respect to claims arising from her treatment.

Moreover, even if Dr. Abbassi were a general surgery specialist, Dr. Nirgiotis similarly was not qualified to testify regarding that specialty. Dr. Nirgiotis is board-certified in general surgery and has a special certificate of qualification in the subspecialty of pediatric surgery.[3] His affidavit of merit indicated that he spent the majority of his professional time "in the active clinical practice and/or instruction of general surgery" in the year preceding the events at issue in this case. Yet his deposition testimony suggests otherwise. Dr. Nirgiotis testified that he was employed as an associate professor in the pediatric department of Texas Tech University Health Sciences Center, rather than the general surgery department. He agreed that the majority of his professional time was spent treating pediatric patients, that more than half of his patients had yet to reach puberty, and at least 90% to 95% of his patients were under the age of 18. He opined, however, that the difference between a pediatric and adult patient was a matter of semantics.

In addition to the "same specialty" requirements of MCL 600.2169(1)(a),

> MCL 600.2169(1)(b) provides that if the defendant physician is a specialist, the expert witness must have "during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either . . . the active clinical practice of that specialty

---

[3] A certificate of special qualification qualifies as board certification for purposes of MCL 600.2169(1)(a). *Woodard*, 476 Mich at 565.

[or][t]he instruction of students in an . . . accredited health professional school or accredited residency or clinical research program in the same specialty." [*Woodard*, 476 Mich at 565 (alterations in original).]

In *Hamilton v Kuligowski*, the companion case to *Woodard*, the defendant was a board-certified specialist in general internal medicine. *Id*. at 556. The plaintiff's expert possessed the same board certification, but devoted "a majority of his professional time to treating infectious diseases, a subspecialty of internal medicine." *Id*. Because the expert did not practice or teach general internal medicine during the relevant time frame, the Court concluded that he was not a qualified expert under MCL 600.2169(1)(b). *Id*. at 578. The same is true here. While Dr. Nirgiotis may be a specialist in general surgery for purposes of MCL 600.2169(1)(a), he spent the majority of his time practicing or teaching pediatric surgery, rather than general surgery. As such, he did not meet the statutory "same practice or instruction" requirement to provide expert testimony concerning general surgery. MCL 600.2169(1)(b).

Dr. Nirgiotis's opinion that the distinction between the two fields amounts to nothing more than semantics is unpersuasive. Even if we accepted Dr. Nirgiotis's position as true from a medical perspective, in the legal sense a specialty refers to "a particular branch of medicine or surgery in which one can potentially become board certified." *Woodard*, 476 Mich at 561. A physician can obtain a certificate of special qualification in pediatric surgery as a subspecialty of general surgery, and "[a] subspecialty, although a more particularized specialty, is nevertheless a specialty." *Id*. at 562. Because Dr. Nirgiotis spent the majority of his professional time practicing or teaching the legally distinct specialty of pediatric surgery, he could not provide expert testimony regarding the standard of practice or care in general surgery. MCL 600.2169(1)(b); *Woodard*, 476 Mich at 578. It was error, therefore, for the trial court to deny summary disposition without considering this challenge to Dr. Nirgiotis's qualifications.

Plaintiff argues that if this Court determines Dr. Nirgiotis is not qualified to testify at trial, the appropriate remedy is not summary disposition, but rather allowing plaintiff to obtain a new expert. Plaintiff contends that allowing the case to continue with a new expert is consistent with the statutory construct and intent of MCL 600.2912d,[4] which requires a complaint to be accompanied by an affidavit of merit "signed by a health professional who the plaintiff's attorney reasonably believes meets the requirements for an expert witness under [MCL 600.2169]." Plaintiff's position is unpersuasive because MCL 600.2912d is inapplicable in these circumstances.

"Under Michigan's statutory medical malpractice procedure, plaintiff must obtain a medical expert at two different stages of the litigation—at the time the complaint is filed and at the time of trial." *Grossman v Brown*, 470 Mich 593, 598; 685 NW2d 198 (2004). During the first stage, the Legislature established a more flexible reasonable-belief standard in recognition of the fact that the plaintiff's available information is limited before legal proceedings are commenced. *Id*. at 598-599. But by the time of trial, the rationale for such flexibility is eliminated

---

[4] In plaintiff's brief, she cites to MCL 600.2912e, which governs the requirements for a defendant's affidavit of meritorious defense. We presume plaintiff intended to cite MCL 600.2912d.

by the pretrial discovery process. *Id*. at 599. Consequently, while a reasonable belief regarding an expert's qualification will suffice at the affidavit-of-merit stage, MCL 600.2169(1) unambiguously precludes testimony from an expert who does not satisfy the statutory qualification criteria. *Id*.

Plaintiff's complaint was filed in January 2020, and the initial scheduling order contemplated that all experts be named by December 2020, completion of discovery by January 2021, and trial in May 2021. The scheduling order dates were amended twice, extending the time for naming experts to March 2021, completion of discovery to April 2021, and trial to September 2021. Hospital defendants' dispositive motion was heard in July 2021, when the case had been pending for more than a year and less than three months remained before trial. Defendants' motion was not a challenge to plaintiff's affidavit of merit, but rather plaintiff's anticipated trial proofs. At this stage, a reasonable belief regarding Dr. Nirgiotis's qualifications was no longer sufficient to avoid dismissal. See *Grossman*, 470 Mich at 599 (explaining that counsel's reasonable belief regarding an expert's qualification does not control whether the expert can testify at trial).

We affirm the trial court's order denying defendants' motion to the extent it denied summary disposition on the basis of a question of fact regarding ostensible agency. However, because plaintiff's standard-of-care expert was not qualified to testify against Dr. Abbassi, we reverse the trial court's order as it relates to claims arising from Dr. Abbassi's treatment and remand for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction. Neither party having fully prevailed, no costs may be taxed.

/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly